COURT OF APPEALS OF VIRGINIA


Present:  Judges Elder, Annunziata and Senior Judge Hodges
Argued at Norfolk, Virginia


CARY CLINTON STACY

v.          Record No. 1565-94-1          MEMORANDUM OPINION[*] BY
                                       JUDGE ROSEMARIE ANNUNZIATA
COMMONWEALTH OF VIRGINIA                 DECEMBER 19, 1995


            FROM THE CIRCUIT COURT OF THE CITY OF NORFOLK
                    William F. Rutherford, Judge


            Douglas Fredericks (E. Jane Anderson, on
            brief), for appellant.

            Monica S. McElyea, Assistant Attorney General
            (James S. Gilmore, III, Attorney General, on
            brief), for appellee.


     Following a bench trial on May 23, 1994, the appellant, Cary

Clinton Stacy ("Stacy"), was convicted of possession of heroin

with intent to distribute.  On June 21, 1994, the trial court

fined Stacy $100 and sentenced him to twenty years in prison,

suspending ten years.  On appeal, Stacy argues that the evidence

was insufficient to support the conviction.  For the following

reasons, we reverse.

     On November 5, 1993, Norfolk police officers executed a

search warrant at 3029 Kimball Terrace in Norfolk.  Investigator

Biemler entered first, proceeding through the dark home until he

reached a well-lit kitchen.  Upon reaching the kitchen, Biemler

saw three males standing by the kitchen's open back door.  At

     [*]Pursuant to Code § 17-116.010 this opinion is not
designated for publication.

trial, Biemler identified Stacy as one of those men.  There was no evidence that Stacy lived at that address or was other than a casual visitor there.

Upon entering the kitchen, Biemler ordered the three men to get on the floor.  Before the men reacted, Biemler tripped on a bicycle positioned between Biemler and the men, causing all four men to fall to the ground, close to where they were standing. The bike landed on top of the subjects, and Biemler landed on top of the bike.  Stacy landed on his back and/or side, his head and shoulders resting upon a cabinet.  Biemler, who had his gun drawn on the subjects, then ordered the men to put their hands in plain view.  Unlike the other two subjects who immediately complied, Stacy hesitated, though he eventually brought forth his hands. At trial, Biemler could not recall where Stacy's hands had been during the period of hesitation.

One by one, Biemler got the men up and passed them to his partner who searched and identified them.  Biemler noticed nothing in the way of evidence upon removing the first two men. However, when Stacy got up, Biemler noticed a plastic baggie and some money on the floor.  In the baggie were fourteen glassine envelopes containing heroin.  The baggie lay approximately six inches from the counter against which Stacy came to rest.  The money amounted to sixty-eight dollars (thirteen five-dollar bills and three ones).  Another bag, this one containing cocaine, was recovered from behind the door.  The door was opened against the

kitchen wall when Biemler entered; Stacy was standing adjacent to the door. The bag of cocaine was found behind the door after Biemler closed it, and it lay approximately three feet from the place where Stacy had fallen. Before tripping on the bike, Biemler did not have a chance to inspect the kitchen floor, and he did not see Stacy throw anything to the ground. After searching Stacy, the officers found no weapons, drugs, or money on his person. Biemler testified that Stacy made no statement and took no action, to indicate his ownership or control over it.

When considering the sufficiency of the evidence on appeal in a criminal case, this Court views the evidence in a light most favorable to the Commonwealth. Higginbotham v. Commonwealth, 216 Va. 349, 352, 218 S.E.2d 534, 537 (1975). On review, this Court may not substitute its own judgment for that of the trier of fact. Cable v. Commonwealth, 243 Va. 236, 239, 415 S.E.2d 218, 220 (1992). Instead, the trial court's judgment will not be set aside unless it appears that the judgment is plainly wrong or without supporting evidence. Code § 8.01-680; Josephs v. Commonwealth, 10 Va. App. 87, 99, 390 S.E.2d 491, 497 (1990) (en banc) (quoting Martin v. Commonwealth, 4 Va. App. 438, 443, 358 S.E.2d 415, 418 (1987)).

It cannot be disputed that Stacy ended his fall in close proximity to the drugs. Based on that evidence, the Commonwealth first contends that Stacy had actual possession of the drugs: Stacy's position relative to the drugs put them in his physical

possession and gave him immediate and exclusive control. Alternatively, the Commonwealth argues that Stacy maintained constructive possession of the drugs.

To support a conviction for either actual or constructive possession, the Commonwealth must establish that an accused knowingly and intentionally possessed that which he is accused of possessing.  Burton v. Commonwealth, 215 Va. 711, 713, 213 S.E.2d 757, 758-59 (1975); Buono v. Commonwealth, 213 Va. 475, 476, 193 S.E.2d 798, 799 (1973) ("To establish `possession' in a legal sense it is not sufficient to simply show actual or constructive possession of the drug by the defendant.  The Commonwealth must also establish that the defendant intentionally and consciously possessed it with knowledge of its nature and character.");  Williams v. Commonwealth, 14 Va. App. 666, 669, 418 S.E.2d 346, 348 (1992); see also McGee v. Commonwealth, 4 Va. App. 317, 322, 357 S.E.2d 738, 740 (1987) (quoting Drew v. Commonwealth, 230 Va. 471, 473, 338 S.E.2d 844, 845 (1986)) ("To support a conviction based upon constructive possession, `the Commonwealth must point to evidence of acts, statements, or conduct of the accused or other facts or circumstances which tend to show that the defendant was aware of both the presence and character of the substance and that it was subject to his dominion and control.'").

As such, an accused's mere proximity to contraband or his presence on the premises where it is found are, alone,

- 4 -

insufficient to establish constructive possession. <u>See, e.g.</u>, <u>Brown v. Commonwealth</u>, 15 Va. App. 1, 9, 421 S.E.2d 877, 882 (1992); <u>Nelson v. Commonwealth</u>, 17 Va. App. 708, 711, 440 S.E.2d 627, 628-29 (1994). Indeed, proximity and presence, together, are insufficient where the evidence does not show that the defendant knowingly possessed what he is accused of possessing. <u>See</u> <u>Scruggs v. Commonwealth</u>, 19 Va. App. 58, 61-63, 448 S.E.2d 663, 665-66 (1994) (defendant, owner and driver of car in which drugs found within passenger seat, did not constructively possess drugs because evidence failed to show defendant knew drugs were there); <u>Jones v. Commonwealth</u>, 17 Va. App. 572, 574, 439 S.E.2d 863, 864 (1994) (defendant, passenger in car where drugs found both between passenger and driver seats and under passenger seat, did not constructively possess drugs because evidence failed to show how long defendant had been in car, whether defendant saw drugs between seats, or whether defendant knew of drugs under seat); <u>Nelson</u>, 17 Va. App. at 711, 440 S.E.2d at 628-29 (1994) (defendant, present in hotel room where drugs found, did not constructively possess drugs because drugs not in plain view, no drugs found on defendant, and evidence failed to show how long defendant had been in room).

Thus, even if Stacy's physical relationship to the drugs amounts to possession, either actual or constructive, the Commonwealth must still establish, beyond a reasonable doubt, that Stacy knowingly and intentionally possessed the drugs. To

meet its burden the Commonwealth may produce evidence of circumstances tending to show that Stacy was aware of the presence and character of the drugs. See, e.g., McGee v. Commonwealth, 4 Va. App. 317, 322, 357 S.E.2d 738, 740 (1987). However, where the Commonwealth's case is based on circumstantial evidence, all the necessary circumstances proved must be consistent with guilt and inconsistent with innocence to establish guilt beyond a reasonable doubt. E.g., Harrell v. Commonwealth, 11 Va. App. 1, 9, 396 S.E.2d 680, 684 (1990).

Here, to establish the requisite knowledge on Stacy's part, the Commonwealth relies solely on the testimony of Officer Biemler that Stacy delayed in bringing forth his hands when so ordered. The Commonwealth relies on this evidence to infer that Stacy did something with the drugs during the delay, an act establishing his knowledge of the presence and character of the drugs. Other than Stacy's delay in raising his hands, there is no evidence of suspicious conduct on Stacy's part tending to show he was aware of the presence and character of the drugs.

This circumstance fails to exclude, beyond a reasonable doubt, reasonable inferences of Stacy's innocence. Officer Biemler testified that, when he entered the kitchen, he tripped on a bicycle causing all four men to fall to the ground. The bicycle landed on top of Stacy and the other two suspects, and Biemler landed on top of the bicycle. Given this sequence of events, it cannot be concluded that the evidence excludes the

hypothesis that Stacy's hands were innocently trapped under either himself, the bicycle, or one of the other men at the time.

Moreover, when the men fell to the floor, Stacy landed on his back or his side. The drugs were found six inches from the cabinet against which his head and shoulders rested. By inference, the drugs were behind him, not beneath him. The Commonwealth's evidence on this point is contradictory; Biemler first testified that the drugs were beneath Stacy but, upon further cross-examination, agreed the drugs weren't "underneath his body proper." Biemler then qualified his answer, stating "All I can say is when I picked him up, that's when I spotted it." The bag of cocaine was found behind the door, three feet away from Stacy. The evidence therefore does not exclude the hypothesis that the drugs were on the floor--near the cabinet and behind the door--unbeknownst to Stacy prior to his entry.

Finally, the evidence shows that two other men occupied the kitchen during the arrest. The evidence does not exclude the possibility that one of the other two men discarded the drugs upon hearing Biemler move through the home.

As such, the evidence is insufficient to support Stacy's conviction. We accordingly reverse.

<u>Reversed.</u>